NOT FOR PUBLICATION (Doc. No. 66)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DAMON CARNEY | Civil No. 11-7366 (RBK/JS) |
| Plaintiff, | **OPINION** |
| v. |  |
| PENNSAUKEN TOWNSHIP POLICE DEPARTMENT, et al., |  |
| Defendants. |  |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion of Pennsauken Township, Pennsauken Township Police Department ("PTPD") and Officer Richard Nurthen ("Officer Nurthen") for summary judgment on all claims asserted against them by Damon Carney ("Plaintiff"). For the reasons expressed herein, the motion will be **GRANTED**.

I. BACKGROUND

This matter arises out of Officer Nurthen's July 8, 2011 arrest of Plaintiff, and the subsequent filing of criminal charges against Plaintiff for an attempt to obtain a prescription drug through forgery. Plaintiff's mother, Denise Bryant, had been diagnosed with brain cancer, which caused her to experience seizures. Pl.'s Counter Statement of Material Facts ¶ 2.[1] In June 2011,

---

[1] The Court observes that Defendants' response to Plaintiff's responsive statement of material facts is improper, as it contains numerous responses that purport to neither admit nor deny Plaintiff's facts because they are "immaterial and irrelevant." See Def.'s Counterstatement of Material Facts ¶¶ 1, 2, 4, 6, 8, 9, 12, 17, 19, 24, 27. All of these facts set forth by Plaintiff are deemed admitted for the purposes of this motion. See L. Civ. R. 56.1; Durkin v. Wabash Nat'l, Civ. No. 10-2013, 2013 WL 1314744, at *6 (D.N.J. Mar. 28, 2013) (deeming as admitted facts that are disputed as not relevant, as "arguments as to the force of those facts belong[] in the brief."). Although this does not prevent the motion from being decided in Defendants' favor here, the Court recommends that Defendants'

Plaintiff accompanied his mother to Cooper Hospital after she had a seizure and fractured her arm. Id. ¶ 1. On July 8, 2011, Plaintiff presented two prescriptions in his mother's name to a CVS Pharmacy in Pennsauken, New Jersey. Defendants' Statement of Undisputed Material Facts ("SUMF") ¶ 1. One prescription was for 400 mg Ibuprofen (Motrin) tablets, and the other was for 5-325 mg oxycodone-acetaminophen (Percocet) tablets. Id.; Def.'s Mot. Summ. J. Ex. B. Both were on prescription forms issued at Cooper University Hospital in Camden, New Jersey, and prescribed by "Beth Lovell S, MD." Id. ¶ 3. Although both prescriptions were computer-printed, and indicated "Refills: 0 (Zero)" in each respective printed section, each prescription bore a mark in the space in the lower left portion of the prescription form where a number of refills could be designated. Defendants call each mark a handwritten numeral "1," while Plaintiff seeks to characterize the marks as "smudges." Id. ¶ 4, Pl.'s Resp. to SUMF ¶ 4.

The CVS pharmacy technician who received the prescription order, Wanda Frey,[2] believed that the mark on the Percocet prescription was suspicious, because prescriptions issued by hospitals never include refills, in her experience. SUMF ¶¶ 5-6. Frey consulted with the pharmacist on duty and then called Cooper Hospital to verify the prescription. Id. ¶ 7. Frey spoke with a physician at Cooper Hospital, who, although not the prescribing physician, indicated that Cooper did not authorize any refills on either prescription. Id. ¶ 8. Frey was then instructed by the pharmacist on duty at CVS to contact the police. Id. ¶ 9. After Frey contacted the police, Officer Nurthen was dispatched to investigate the matter. Id. ¶ 10. Officer Nurthen spoke with Frey, took possession of the Percocet prescription, and independently contacted

---

counsel strictly adhere to the requirements of Local Civil Rule 56.1 when engaging in future motion practice within this District.

[2] Plaintiff initially asserted a malicious prosecution claim against "Wendy Frey." However, the Statement of Undisputed Material Facts and her deposition transcript refer to Ms. Frey as "Wanda." See Frey Dep., Pl.'s Opp'n Ex. C.

Cooper Hospital, verifying that the prescribing physician did not include any refills when Cooper issued the prescriptions to Ms. Bryant. Id. ¶¶ 11-16. As a result, Officer Nurthen decided to charge Plaintiff with a violation of N.J.S.A. 2C:35-10.5(d), which makes it illegal to attempt to obtain a prescription drug through a forgery. Id. ¶ 17. When Plaintiff returned to pick up the prescriptions, he was arrested and taken into custody for several hours. Id. ¶¶ 18-20. Officer Nurthen's investigative report indicates that when Frey spoke to Dr. Jessica Mitchell, the physician at Cooper Hospital, Dr. Mitchell, told Frey that Ms. Bryant, Plaintiff's mother, "is known by hospital staff to be a narcotic seeker." Supplementary Incident Field Report, Def.'s Mot. Summ. J. Ex. C.

Frey denies making any statement to Officer Nurthen that Plaintiff's mother is a "narcotic seeker." Frey Dep. 39, Def.'s Mot. Summ. J. Ex. D. Dr. Mitchell also testified that she never treated Ms. Bryant and does not recall telling anyone at CVS that Ms. Bryant was a narcotic seeker. Mitchell Dep. 8-11, Def.'s Mot. Summ. J. Ex. G. She also indicated that she had no independent recollection of speaking with anyone about Bryant, although she recognized her own voice on an audio recording of a call between herself and Officer Nurthen on the date Plaintiff was arrested. Id. at 10, 11, 19, 20. At his deposition, however, Officer Nurthen maintained that Frey told him that Dr. Mitchell had told her that Denise Bryant was a "narcotic seeker." Nurthen Dep. 20-21, Def.'s Mot. Summ. J. Ex. E.

Plaintiff was initially charged with prescription fraud, but the prosecutor's office later dismissed the charge at the preliminary hearing. Id. ¶ 21. On December 20, 2011, Plaintiff filed suit against Officer Nurthen, the City of Pennsauken, the PTPD, and CVS Pharmacy, alleging numerous violations of his civil rights, and asserting that he incurred $6,000 in attorney's fees in defending against the criminal charges filed against him. Pl.'s Counter Statement of Material

3

Facts ¶ 24.  Plaintiff subsequently filed an Amended Complaint, which added Frey as a defendant and alleged new causes of action.  Plaintiff was granted leave to again amend his complaint. The Second Amended Complaint, which is now operative, contained claims for malicious prosecution and a claim under 42 U.S.C. § 1983, pursuant to the doctrine of Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), against Officer Nurthen, Pennsauken, and the PTPD.  The Second Amended Complaint contained a sole claim for malicious prosecution with respect to CVS and Frey.  Pursuant to an Opinion and Order dated June 3, 2013, this Court dismissed the malicious prosecution claim against CVS and Frey.  The remaining municipal defendants now move for summary judgment.

## II.    LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  Anderson, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. <u>Anderson</u>, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in its favor. <u>Id.</u> at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

Defendants argue that Plaintiff has not set forth sufficient evidence to create an issue of material fact for trial as to the malicious prosecution claim, and also that summary judgment should be granted on this claim on the basis of qualified immunity. They further argue that even if summary judgment were not granted on the malicious prosecution claim, summary judgment should be granted on the <u>Monell</u> claim for municipal liability. Finally, with respect to damages, Defendants argue that Plaintiff has not set forth sufficient evidence to support a claim for punitive damages.

Count I of Plaintiff's Second Amended Complaint asserts a claim for malicious prosecution against Officer Nurthen pursuant to § 1983.[3] Plaintiff alleges that Officer Nurthen engaged in "wrongful conduct in subjecting Plaintiff to false criminal charges," that he

---

[3] As discussed <u>infra</u>, a malicious prosecution claim may arise under either state tort law or under § 1983. Although Count I is not explicitly captioned as a § 1983 claim, it is clear that this is the posture of the claim, as it alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution, which is not an element of a state law malicious prosecution claim. Sec. Am. Compl. ¶ 47. The only element disputed by the parties is the probable cause element, which would be required for either a § 1983 or state law malicious prosecution action.

5

"disregarded information provided to [him] by Plaintiff," and had no probable cause to arrest Plaintiff or charge him with criminal acts.  Sec. Am. Compl. ¶¶ 47, 51.

New Jersey common law recognizes the tort of malicious prosecution.  The elements of a state law malicious prosecution claim are that (1) a criminal proceeding must have been instituted or continued by the defendant against the plaintiff; (2) the proceeding was terminated in favor of the accused; (3) with absence of probable cause for the charge; and (4) with malice or a primary purpose other than bringing the accused to justice.  Linda v. Schmidt, 67 N.J. 255, 262 (1975) (emphasis omitted).

Although the United States Supreme Court "has never explored the contours of a Fourth Amendment malicious prosecution suit under § 1983," there is "a range of approaches in the lower courts."  Wallace v. Kato, 549 U.S. 384, 390 n.2 (2007).  The Third Circuit has recognized such a § 1983 claim, which requires a plaintiff to establish both the common law elements of the state law tort as well as "some deprivation of liberty that rises to the level of Fourth Amendment 'seizure' . . . ."  Torres v. McLaughlin, 163 F.3d 169, 175 (3d Cir. 1988); but see Parish v. City of Chicago, 594 F.3d 551, 553 (7th Cir. 2009) ("satisfying the elements of the state-law tort of malicious prosecution . . . knocks out any constitutional tort of malicious prosecution, because . . . due process of law is afforded by the opportunity to pursue a claim in state court").[4]

Under the Third Circuit's formula for a § 1983 malicious prosecution claim, not all "seizures" can serve as the basis for a malicious prosecution claim.  Rather, a plaintiff "must show that he suffered a seizure as a consequence of a legal proceeding."  Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998).  The "offending legal process [usually] comes

---

[4] The Third Circuit subsequently indicated that "a section 1983 malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it was not based on substantive due process."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000) (citing Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998)).

6

either in the form of an arrest warrant (in which case the arrest warrant would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001). On the other hand, a warrantless arrest along with the issuance of a summons requiring a criminal defendant to appear in court does not alone amount to a seizure for the purposes of a malicious prosecution claim. Mantz v. Chain, 239 F. Supp. 486, 503 (D.N.J. 2002) (citing Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999)).

Here, the only element that Defendants contest is the existence of probable cause, and thus it is that element alone that the Court analyzes.[5] "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citations omitted). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). The existence of probable cause does not require that police officers were correct in hindsight in resolving conflicting evidence. Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir. 2005).

---

[5] A § 1983 claim for malicious prosecution requires probable cause to file charges. Herman v. City of Millville, 66 F. App'x 363, 365 n.3 (3d. Cir. 2003). However, when charges are filed as part of a single transaction in connection with an arrest by a police officer, courts have not analyzed probable cause to arrest separately from probable cause to charge. See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Bowser v. Borough of Freehold, 99 F. App'x 401, 403-04 (3d Cir. 2004); Makboul v. Port Auth. of New York and New Jersey, 2011 WL 4594224, at *5-6 (D.N.J. Sept. 29, 2011). Like probable cause to arrest, probable cause to set a prosecution in action requires facts that would cause "an ordinarily prudent individual" to "believ[e] that an offense had been committed." Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 639 (D.N.J. 2011). Plaintiff has not introduced any evidence that he was charged through any other mechanism, such as an indictment or a criminal complaint. Plaintiff pleads no additional facts that were involved in Officer Nurthen's decision to file charges. Thus, like the parties in their respective briefs, the Court does not distinguish in this Opinion between probable cause to arrest and probable cause to charge.

However, mistakes made by police officers "must be those of reasonable men." Cann v. Wanner, Civ. No. 05-5189, 2006 WL 1805977, at *4 (E.D. Pa. June 28, 2006) (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). Although the probable cause question in a § 1983 suit is generally "one for the jury . . . a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." Merkle, 211 F.3d at 788-89. Thus, the Court must determine whether the objective facts available to Officer Nurthen were sufficient to support a reasonable belief that Plaintiff had attempted to commit prescription drug fraud. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (it is the objective facts that count, and "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause").

The Court therefore will review the evidence produced by Plaintiff to determine whether he has raised a genuine issue of material fact as to whether Officer Nurthen had probable cause to arrest and charge Plaintiff. Because Defendants are the moving parties, the Court must consider all facts in the light most favorable to Plaintiff.

At the time Officer Nurthen arrested Plaintiff, Officer Nurthen had taken possession of the prescription form that Plaintiff presented to the pharmacy staff. The form has a mark that could certainly be reasonably interpreted as a handwritten numeral "1" in the section indicating the number of refills. He also spoke with a physician at Cooper Hospital, who informed him that the prescription was initially issued with no refills permitted. Under New Jersey law, it is a crime to attempt "to obtain possession of a prescription legend drug . . . by forgery or deception." N.J.S.A. 2C:35-10.5(d). Forgery includes presenting a forged writing with knowledge of the forgery, even if the one presenting the writing was not the forger. N.J.S.A. 2C:21-1(a)(3). The

8

Court will analyze in turn Plaintiff's arguments as to why he believes that these facts did not constitute probable cause.

### A. The "Smudge" Argument

Plaintiff argues that because forgery requires "purpose to defraud" or "knowledge that [the accused] is facilitating a fraud," no probable cause existed, because Officer Nurthen did not have any reason to know that Plaintiff possessed the intent or mens rea connected with presenting a fraudulent prescription. Pl.'s Opp'n at 7 (citing New Jersey v. Felsen, 383 N.J. Super. 154, 163 (App. Div. 2006)).[6] His first argument that no facts suggesting intent or knowledge exist is because the mark in the prescription "appears to be nothing more than a penmark or smudge," and that "a smudge mark in the lower left hand corner [of] the prescription cannot reasonably be construed as a forgery when the typed portion of the prescription is completely unaltered." Id. at 7-8.

While the argument that the mark on the refill line of the prescription is not the number "1", but rather a "smudge" might be appropriate to present in a criminal trial to establish a reasonable doubt as to guilt, this argument does not negate probable cause. The key question here is whether the "objective facts" would support a "reasonable belief" that the prescription had been altered. Merkle, 211 F.3d at 789. The objective facts show that there is a dark mark in the shape of a vertical line directly on the line indicating how many refills are permitted. Considering that this part of the form is intended for a numeral to be placed in, it was certainly reasonable for Officer Nurthen to believe that a vertical line in that area was the numeral "1." This is especially so, considering that Plaintiff presented two prescriptions to the pharmacy on

---

[6] Because Plaintiff did not include page numbers on his brief in opposition to summary judgment, for the purposes of citation in this opinion, the Court has designated the cover page of the brief as page 1, with all following pages numbered in sequential order.

9

the date of his arrest, each with a similar mark in the exact same place on the prescription form where refills are designated. See Pl.'s Opp'n Ex. B. It was more than reasonable based on these facts for the officer to conclude that each form had the number "1" marked on the refill line, and not that both forms happened to have a nearly identical "smudge" in the same place on the form.

### B. Lack of Knowledge or Mens Rea

Plaintiff also argues that Officer Nurthen did not conduct any additional investigation to determine who made the mark on refill line of the prescription. Pl.'s Opp'n at 8. Although Plaintiff explained to the officer while being questioned that his mother recently had broken her arm and that he was merely filling the prescription for her, Plaintiff argues that Officer Nurthen performed no additional investigation to determine whether Plaintiff may have merely been the innocent courier of the prescription form for another person. Id. The Court first reiterates that the crime that Plaintiff was arrested for and charged with required that he either forged the prescription himself, or presented it with knowledge that it was forged. N.J.S.A. 2C:35-10.5(d). Thus, all that is required for probable cause is a reasonable belief that Plaintiff knew the prescription form was altered, and not a reasonable belief that he was the person who made an alteration.

The probable cause standard does not require than an officer "correctly resolve[s] conflicting evidence." Wright, 409 F.3d at 603. Therefore, "a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged." Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (citing Illinois v. Gates, 462 U.S. 213, 231-32 (1983)). Thus, a police officer is not required to exhaust all other possible conclusions that might be drawn from the available evidence other than a criminal act being committed by the individual placed under arrest. For example, the Third Circuit held that

in a criminal trespass case, where the arrestee claimed that she had the privilege to enter the building she was suspected of trespassing in, the police did not have to first investigate the accused's innocent explanation in order to arrest and charge her.  Wright, 409 F.3d 595.  Indeed, an "officer considering the probable cause issue in the context of crime requiring a mens rea on the part of the suspect will always be required to rely on circumstantial evidence regarding the state of his or her mind."  Paff v. Kaltenbach, 204 F.3d 425, 437 (3d Cir. 2000).

      Although the Third Circuit has never addressed the issue, all of the federal Courts of Appeals that have faced this question in the context of counterfeit currency have found that when an individual is caught passing a forgery, there is probable cause with respect to mens rea to believe that the individual passing the note has committed a crime, although the charged crime requires specific intent.  Rodis v. City, County of San Francisco, 558 F.3d 964, 970 (9th Cir. 2009) (citing cases from six different circuits where this specific finding has been made in connection with forged currency).[7]  The Court believes that probable cause with respect to counterfeit currency is analogous to this case, which involves a drug prescription that an officer believed was altered.  If anything, the probable cause issue is even clearer here.  Because the nature of currency is that it is typically passes through the hands of many individuals, it seems more likely from an objective perspective that an individual caught passing counterfeit bills could have obtained them innocently than an individual presenting a forged or altered prescription to a pharmacy.

      C.  The "Narcotic Seeker" Allegation

---

[7] The Ninth Circuit in Rodis declined to decide the case on the question of probable cause, instead determining that in connection with the plaintiff's false arrest claim, the arresting officer was entitled to qualified immunity because it was undisputed that the note passed by the arrested individual in that case "looked odd," and thus the arresting officer was not plainly incompetent, nor did he knowingly violate the law.  Rodis, 558 F.3d at 970 (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

Finally, Plaintiff argues that there is an issue of material fact as to whether Officer Nurthen falsely inserted the statement about Plaintiff's mother being a "narcotic seeker" into the police investigative report in order to bolster the justification for the arrest.[8] It is true that a reasonable jury might conclude that Officer Nurthen fabricated the statement in the police report about Denise Bryant being a "narcotic seeker." However, when a plaintiff challenges probable cause based on an alleged false statement by a law enforcement officer, such false statements must be "material to the finding of probable cause." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). A false statement is material when the false material is set aside, and what remains "is insufficient to establish probable cause." Id. (quoting Franks v. Delaware, 438 U.S. 154 156 (1978)). Whether Plaintiff's mother was a "narcotic seeker" or not was immaterial to whether probable cause existed to arrest Plaintiff. For the reasons discussed above, probable cause existed, even with this factor set aside. As discussed in Section III.A of this Opinion, the facts supported a reasonable belief that the prescription form had been altered. As set forth in Section III.B, it was also reasonable for an officer to draw the inference that a person presenting an altered prescription form knows it has been altered. Nothing more was required in order to satisfy the elements of the charged crime. Officer Nurthen testified that the "narcotic seeker" characterization did not factor into his decision to arrest Plaintiff, and the statement was immaterial to the existence of probable cause from an objective standpoint. Courts should take a "common sense" approach to assessing probable cause. Pardue v. Gray, 136 F. App'x 529, 532 (3d Cir. 2005). Applying such a common sense approach, a reasonable person presented with the facts involved in this case could arrive at the conclusion that an offense had been committed. Thus, a reasonable jury could not find that under the "facts and circumstances" present, Officer

---

[8] Although not relevant to the outcome of this motion, the Court observes that there is nothing in the record to suggest that such a label is accurate with respect to Ms. Bryant.

Nurthen lacked knowledge of sufficient facts to establish probable cause to arrest and charge Plaintiff with the crime of prescription drug fraud.  Id.

For the reasons discussed herein, it is not necessary to address the arguments of the parties as to whether the qualified immunity doctrine applies to Officer Nurthen's actions, or whether punitive damages are appropriate.  As Plaintiff has not opposed the Monell count, judgment will be entered for Defendants on that claim as well.  See Amland Prop. Corp. v. Alum. Co. of Am., 808 F. Supp. 1187, 1196 (D.N.J. 1992).

### IV.     CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment will be **GRANTED**.  An accompanying Order shall issue.


Dated:  3/18/2014                                                         /s/ Robert B. Kugler
                                                                                                                                               ROBERT B. KUGLER
                                                                                                                                               United States District Judge